MATTHEW J. GULDE*
guldem@sec.gov
SECURITIES AND EXCHANGE COMMISSION
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
 (817) 978-1410 (mjg)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                          **Plaintiff,**<br><br>          vs.<br><br>**AKAZOO S.A.,**<br><br>                          **Defendant.** | 20 Civ. _____ (\_\_\_\_\_)<br><br>**JURY TRIAL DEMANDED**<br><br>**ECF CASE** |

**COMPLAINT**

Plaintiff Securities and Exchange Commission ("SEC"), for its Complaint against Akazoo S.A. ("Defendant," "Akazoo," or "the Company"), alleges as follows:

**I.**
**SUMMARY OF THE ACTION**

1.      Over a multi-year period spanning its existence as a private and then public entity, Akazoo defrauded multiple groups of investors out of millions of dollars.  It claimed to be a rapidly growing music streaming company focused on emerging markets with millions of paying monthly subscribers and over €105 million (or $124 million) in annual revenue.  In reality, as it recently admitted in a public filing with the SEC, the Nasdaq-listed company had no paying users and negligible, if any, revenue.

\* Not admitted in SDNY, *pro hac vice* application filed herewith.

2.     Akazoo is the product of a 2019 business combination between (a) Akazoo Limited ("Old Akazoo"), a purported subscription-based online music streaming company formed in 2010 and (b) Modern Media Acquisition Corp. ("MMAC"), a special purpose acquisition company.  When Akazoo took its current form, the Company held $54.8 million in investor funds as a result of the business combination: $14.2 million from MMAC's shareholders and another $40.6 million from accredited investors (individuals and institutions) through a private investment in public equity ("PIPE") offering at the time of the combination.  The Company obtained these investor funds by grossly misrepresenting the nature and success of its music streaming business.

3.     The Company continued to mislead the public while its shares were traded on the Nasdaq from September 2019 to May 2020.  Among other things, Akazoo claimed €64.5 million in revenue in the first half of 2019 and €15.6 million in gross profit based on thriving operations in 25 countries.  In reality, Akazoo generated at most negligible revenue, operated in only a few countries, and its only significant source of funds was the $54.8 million it had raised from investors.

4.     After a short-seller report exposed the Company's fraud in April 2020, Akazoo's Board initiated an internal investigation of the Company's operations.  On May 21, 2020, Akazoo described the results of the internal investigation in a Form 6-K filed with the SEC, admitting that "former members of Akazoo's management team and associates defrauded Akazoo's investors…by materially misrepresenting Akazoo's business, operations, and financial results as part of a multi-year fraud."  Additionally, Akazoo admitted that it had only negligible revenue and subscribers, its historical financial statements were materially false and misleading, and "former members of Akazoo management and associates participated in a sophisticated

scheme to falsify Akazoo's books and records[.]" As a result of the conduct by Akazoo's former management team, and as described in its public filings, Akazoo defrauded its investors and violated the federal securities laws.

5. On May 1, 2020, the Nasdaq halted trading in Akazoo's stock, whose price had fallen from a high of $7.49 in the weeks following its formation in September 2019 to $1.16 when trading stopped. On June 2, 2020, the Nasdaq delisted Akazoo's stock. As of the date of this filing, Akazoo has depleted more than $23 million of investor funds and currently holds approximately $31.5 million.

## II.
## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6. The SEC brings this action under Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b)] and Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)]. The SEC seeks permanent injunctions against the Defendant, enjoining it from committing future violations of the securities-law provisions identified in this Complaint, and disgorgement of all ill-gotten gains obtained as a result of its fraudulent activity, plus prejudgment interest. The SEC also seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)] and Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)].

## III.
## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]. Defendant has directly or indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national

securities exchange, in connection with the acts, practices, transactions, and courses of business alleged in this Complaint.

8. Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Certain of the transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within the Southern District of New York and elsewhere, and were effected, directly or indirectly, by making use of the means or instruments or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of a national securities exchange.  Both Akazoo's and MMAC's common stock were traded on the Nasdaq, which is located in this District.  Prior to the business combination, representatives of Old Akazoo and MMAC met in New York City to conduct due diligence meetings and plan the PIPE offering.

## IV.
## DEFENDANTS

9. **Akazoo S.A.** is a company organized under the laws of Luxembourg with its purported principal place of business in London, United Kingdom and its actual principal place of business in Athens, Greece.  Akazoo's ordinary shares are registered with the SEC pursuant to Section 12(b) of the Exchange Act and were traded on the Nasdaq under the ticker "SONG," prior to being delisted on June 2, 2020.  Before its September 11, 2019 business combination with MMAC, Akazoo operated as Akazoo Limited ("Old Akazoo"), a company organized under the laws of the United Kingdom with its primary place of business in Athens, Greece.  Old Akazoo was a purported subscription-based online music streaming company.  It was formed in 2010 when it spun off from its Greek-based parent company.

## V.
## OTHER RELEVANT ENTITY

10. **Modern Media Acquisition Corp. ("MMAC")** was a special purpose acquisition corporation formed under the laws of Delaware for the purpose of effecting a merger, share exchange, asset acquisition, or other similar business combination with a focus on media, entertainment, and marketing service companies. MMAC filed an initial public offering of common stock with the SEC on Form S-1, effective May 11, 2017, and registered its common stock under Section 12(b) of the Exchange Act. On May 17, 2017, MMAC conducted an IPO that raised $207 million, which the company was to hold in trust until it effected a business combination. MMAC's common stock was publicly traded on the Nasdaq. Based on the terms set out in MMAC's IPO prospectus, and in accordance with its charter, if MMAC did not complete a deal by February 17, 2019, it had to dissolve, liquidate, or request an extension from its shareholders. MMAC's shareholders had a right to redeem their shares for cash if MMAC did not meet the February 17, 2019 deadline or they could keep their shares and vote for an extension. Under Exchange Act Rule 12g-3(a), Akazoo is a "successor issuer" to MMAC.

## VI.
## FACTS

**A.  Akazoo's Formation**

11. Beginning in May 2017, MMAC started searching for a media, entertainment, and marketing service company with which to combine, eventually identifying Old Akazoo as a target. Old Akazoo purported to be a thriving business with key metrics comparable to the streaming service Pandora. Additionally, Old Akazoo claimed that it had: (1) launched a free, ad-supported streaming radio service in 2017; and (2) acquired and developed a small portfolio of patented artificial intelligence-based recommendation technology.

12. Ultimately, MMAC and Old Akazoo combined on September 11, 2019 to form Akazoo (Nasdaq: SONG).

**B.     Akazoo Fraudulently Raised $54.8 Million**

   *i.  MMAC Stock Rollover*

13. Because MMAC did not meet its original deadline of February 2019 to consummate a business combination, many of its shareholders chose to redeem their shares. After paying out redeemed shares, and by the time MMAC completed the business combination with Old Akazoo, only $14.2 million remained from the $207 million raised during MMAC's May 2017 IPO.

14. Leading into the business combination with Old Akazoo, MMAC's shareholders again had a choice: redeem their MMAC shares for cash or convert their shares into the right to receive shares in Akazoo.  According to MMAC's Certificate of Incorporation, approval of the business combination required an affirmative vote of a majority of the outstanding MMAC shares.  Encouraging its shareholders to support conversion, MMAC issued a proxy statement for its August 28, 2019 shareholder meeting, based on information provided by Old Akazoo.  The proxy statement contained the following claims, all of which Akazoo has since admitted were false:

   a. Old Akazoo had more than 38.2 million registered users and 4.6 million paying subscribers as of December 31, 2018;

   b. Old Akazoo also generated revenue through a free, ad-supported radio service with 2.6 million users in its first full year of operation;

   c. Old Akazoo operated in 25 different countries and growing;

   d. Old Akazoo was a profitable business with positive EBITDA since inception;

   e. Old Akazoo had €105 million in revenue in 2018; and

  f. Old Akazoo had developed strong relationships with a large number of global, regional, and local music content providers.

15. Based on the proxy and investor presentations by the Old Akazoo's CEO and CFO (who became the CEO and CFO of Akazoo after the business combination with MMAC) that included many of the same false claims, MMAC's remaining shareholders approved the business combination, and converted their MMAC shares into the right to receive Akazoo shares. Per the terms of the business combination agreement, Akazoo received the remaining $14.2 million of MMAC investor funds.

  ii. *The PIPE Offering*

16. The business combination agreement between MMAC and Old Akazoo required there be at least $53 million in available cash for Akazoo upon consummation of the transaction. Because MMAC had only $14.2 million in rolled-over investor funds, MMAC and Old Akazoo amended their agreement to allow the shortfall to be raised through a PIPE offering of Akazoo shares.

17. During the PIPE offering of Akazoo shares, from approximately July 2019 to September 2019, Old Akazoo's CEO and CFO participated in investor presentations where they made the fraudulent claims about Akazoo's subscribers and revenue listed above.

18. Induced by these fraudulent statements, investors purchased $40.6 million worth of Akazoo shares and convertible warrants (the "PIPE Investors"). Combined with the $14.2 million in investor funds from MMAC, Akazoo had $54.8 million to fund its operations.

  *iii.*  *Public Trading*

  19. From September 11, 2019 until May 21, 2020, Akazoo's stock was traded on the Nasdaq. During that time, thousands of retail investors purchased shares of the Company's stock.

  20. While its shares traded publicly on the Nasdaq, Akazoo made several false statements in public reports signed by its CEO and filed with the SEC, including the following:

| DATE | MEDIUM | FALSE STATEMENT |
| --- | --- | --- |
| September 11, 2019 | Form 20-F; Press Release | <ul><li>Akazoo "operates in 25 countries."</li><li>"In the last 5 years, SONG's premium subscribers have grown from 1.1 million in 2014 to over 5.3 million today."</li><li>In the first half of 2019, the Company's revenues grew 39% year-over-year.</li></ul> |
| September 27, 2019 | Form 6-K | <ul><li>Financial statements reflecting €64.5 million in revenue in the first half of 2019 and €15.6 million in gross profit.</li></ul> |
| November 25, 2019 | Form 6-K; Press Release attached | <ul><li>"Akazoo S.A., SONG, currently operates in 25 countries[.]"</li><li>"In the past five years, SONG's premium subscribers have grown from 1.1 million in 2014 to over 5.3 million[.]"</li></ul> |
| December 9, 2019 | Form 6-K; Press Release attached | Regarding 2019 Third Quarter results:<ul><li>"Revenues increased 24% to €35.0 compared to €28.1 million in the third quarter of 2018."</li><li>"5.5 Million Premium Subscribers end of Q3, Up 28% Year-over-Year"</li></ul> |

21. During the 8-month period that Akazoo disseminated its fraudulent statements to the market, Akazoo's stock traded at an average price of $4.96 and as high as $7.49 on September 26, 2019. By the time Nasdaq halted trading on May 1, 2020, after the fraud was exposed, the stock price had plunged to $1.16.

22. As Akazoo would soon admit to the public, none of its repeated claims about its subscriber base, operations, or revenues were true. Akazoo's streaming business generated, at most, negligible revenue from September 2019 through May 2020. The Company operated in only a few countries, and the Company had only a marginal amount of non-revenue generating subscribers. Rather, the Company's only significant source of funds during that time was the $54.8 million raised from investors. Akazoo's management knew, or was severely reckless in not knowing, that the statements referenced in paragraphs 14, 17, and 20 about the Company's subscriber base, operations, and revenue were materially false and/or misleading.

23. Akazoo created the appearance of revenue by claiming that it had relationships with companies it called "aggregators," who purportedly collected revenue from Akazoo's subscribers and paid expenses on Akazoo's behalf. In fact, the companies that Akazoo identified as aggregators either did not exist or did not have a relationship with Akazoo.

C. **Akazoo Publicly Admitted Its Fraud**

24. On April 20, 2020, a short-selling hedge fund publicly released a detailed report concluding that Akazoo was a complete scam, with negligible subscribers and revenue.

25. On April 22, 2020, Akazoo announced the formation of a special committee to investigate the claims raised by the hedge fund and Akazoo's share price closed at $1.6599—a drop of more than 34% from the closing price on April 17, 2020, the last business day before the short-selling hedge fund released its report.

26. On May 1, 2020, Akazoo disclosed in a Form 6-K filing with the SEC that its Board had terminated Akazoo's CEO and asked him to resign from the Board based on his failure to cooperate with the Special Committee's investigation.

27. On May 21, 2020, Akazoo filed a Form 6-K with the SEC describing the results of the Special Committee investigation, which confirmed that Akazoo was, in fact, a complete sham.  In less than a month, the Special Committee determined that:

- "former members of Akazoo's management team and associates defrauded Akazoo's investors . . . by materially misrepresenting Akazoo's business, operations, and financial results as part of a multi-year fraud";

- Akazoo had only negligible actual revenue and subscribers for years, and its historical financial statements were materially false and misleading; and

- "former members of Akazoo management and associates participated in a sophisticated scheme to falsify Akazoo's books and records."

Additionally, the Company announced that Nasdaq was suspending trading in its shares and that Akazoo would not dispute Nasdaq's decision to delist its securities.

28. Although Akazoo claimed in the May 21, 2020 Form 6-K that it was "tak[ing] all available steps to maximize recovery for defrauded investors," Akazoo has spent over $6.5 million since the release of the short-selling hedge report.  Of the $54.8 million in investor funds originally held by Akazoo (as discussed above in Paragraph 18), only $31.5 million currently remains.

**FIRST CLAIM FOR RELIEF**

**Violations of Section 17(a) of the Securities Act
[15 U.S.C. § 77q(a)]**

29. Paragraphs 1 through 28 are re-alleged and incorporated by reference.

30. By engaging in the conduct described herein, Defendant Akazoo, directly or indirectly, singly or in concert with others, in the offer or sale of securities, by use of the means or instrumentalities of interstate commerce or of the mails:

    a. knowingly or with severe recklessness employed a device, scheme, or artifice to defraud; and/or

    b. knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    c. knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

31. By engaging in this conduct, Defendant Akazoo violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 Thereunder [17 C.F.R. § 240.10b-5]**

32. Paragraphs 1 through 28 are re-alleged and incorporated by reference.

33. By engaging in the conduct described herein, Defendant Akazoo, directly or indirectly, singly or in concert with others, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly:

    a. employed devices, schemes, and artifices to defraud; and/or

  b. made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

  c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities and upon other persons

34. By engaging in this conduct, Defendant Akazoo violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF

**Violations of Section 13(a) of the Exchange Act
[15 U.S.C. § 78(m)] and Rules 12b-20, 13a-16, and 13a-19 thereunder
[17 C.F.R. §§ 240.12b-20, 240.13a-16, and 240.13a-19]**

35. Paragraphs 1 through 28 are re-alleged and incorporated by reference.

36. Defendant Akazoo, in public filings with the SEC from September 2019 through May 2020, misrepresented, failed to disclose, and/or made misleading omissions about the Company's operations, including its subscribers and revenue.

37. By engaging in this conduct, Defendant Akazoo failed to file Forms 6-K and 20-F that were true and correct, and failed to include material information in its required statements and reports as was necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

38. By engaging in this conduct, Defendant Akazoo violated, and unless enjoined, will continue to violate, Section 13(a) of the Exchange Act and Rules 12b-20, 13a-16, and 13a-19 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-16, and 240.13a-19].

## FOURTH CLAIM FOR RELIEF

**Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act
[15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)]**

39.     Paragraphs 1 through 28 are re-alleged and incorporated by reference.

40.     By engaging in conduct described herein, from September 2019 through May 2020, Defendant Akazoo, whose securities are registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l]:

- failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of its assets; and

- failed to devise and maintain a system of internal controls sufficient to provide reasonable assurances that: (i) transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP or any other criteria applicable to such statements, and (ii) to maintain accountability of assets.

41.     By engaging in this misconduct, Defendant Akazoo violated, and unless enjoined, will continue to violate, Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

## PRAYER FOR RELIEF

### I.

Permanently restraining and enjoining Defendant from violating Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)]; and Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78j(b); 78(m)(a); 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 10b-5, 12b-20, 13a-16, and 13a-19 thereunder [17 C.F.R. §§ 240.10b-5; 240.12b-20; 240.13a-16; and 240.13a-19].

### II.

Ordering Defendant to disgorge all ill-gotten gains derived from the conduct alleged in this Complaint, together with prejudgment interest thereon;

### III.

Granting such other and further relief as this Court may deem just and proper.

Dated: September 30, 2020

Respectfully submitted,

*s/Matthew J. Gulde*
MATTHEW J. GULDE*
guldem@sec.gov
SECURITIES AND EXCHANGE COMMISSION
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
(817) 978-1410 (mjg)

*Counsel for Plaintiff*
*Securities and Exchange Commission*

*Not admitted in SDNY, *pro hac vice* application filed herewith.